Stamper v. Turtle Wax, 518-0514. Let's see, it appears that we have... Ready to go? Okay, Mr. Dyson. Do you understand that athletes are going to provide the time? Has anybody talked to you about this? No, Your Honor. Okay. Are you talking to me? You're going to have to. Okay. I'm taking it all on myself. Okay, good. You're the team player. All right. Are she indicated otherwise? That's why I wanted to make sure that the appellant was aware. Okay, go for it. May it please the Court, Counsel. Your Honor, this case presents a question concerning the Illinois discovery rule applied in a related injury case where the deceased, now deceased, filed a workers' compensation case alleging that his brain cancer was caused by benzene exposure. So the Court is called upon to construe what the Illinois discovery rule means under those circumstances and whether the filing of that claim by itself indicates that the deceased knew or should have known that his injury was wrongfully caused. The key facts that I believe the chopper failed to look at in this case were that at the same time the decedent filed that claim, he was being told by all of his treating physicians and he was told by the expert that was hired by his claimant's attorney that his injury was not wrongfully caused. It was not caused by benzene exposure. And that created a real problem for him. There was no evidence that he objectively knew. He had any objective basis to determine that his injury was wrongfully caused. He was a layperson. He suspected it was wrongfully caused. He hired a lawyer to find out if it was wrongfully caused. The lawyer came back and said, I'm sorry. We said we'd represent you, and the evidence is clear in this. We have two uncontested affidavits. The lawyer came back and said, we can't prove it's wrongfully caused. We're going to have to withdraw from your case. And under those circumstances, what is a claimant supposed to do? We contend that he is supposed to do what he did, not file a personal injury case. He has no basis to file a personal injury case. The defendant's position is he should have filed a personal injury case, and he has no evidence that his injury was wrongfully caused. We contend, and we've cited many cases in Illinois that can show that when a claimant's only belief is subjective and he's trying to investigate whether his injury was wrongfully caused, the statute of limitations is not triggered as a matter of law. It presents a factual question for the jury. The Illinois cases all reach the conclusion that the issue of whether the statute of limitations or discovery rule is triggered is generally not a fact. We contend it's not a fact, so the jury should decide this question. The trial court closed the door on the other side of the evidence in this case. The court looked at the claim form and said that's it, that's all we're looking at. I'm not going to look at the fact the doctor said it wasn't wrongfully caused. I'm not going to look at the fact the experts he hired said it wasn't wrongfully caused. Once he's filed that claim, that's it, the door is closed. We believe that's contrary to Illinois law. We cite a lot of Illinois cases that lead all the way up to that point. For instance, they find that when a claimant hires an attorney to investigate the case, when he requests medical records, when he questions the doctors, that's not enough to trigger these statute of limitations as a matter of law. We found no Illinois cases addressing this particular situation on its point, but we did find a Texas Supreme Court case that actually is factually almost identical to this case, and that was the Hunsaker case. In the Hunsaker case, the claimant filed a workers' compensation case. He hired, in fact, two separate attorneys to represent him in that case. They both ended up withdrawing because they could not find an expert to support the contention that his injury was wrongfully caused, and they had to withdraw. The claimant then went many years without filing a personal injury case. They filed a personal injury case 10 years later because a doctor had finally concluded that his injury was wrongfully caused. We believe that that case should be followed here. We believe the Texas Supreme Court has a similar line of cases in looking at the discovery rule there for latent injury cases. We believe that is the case the court should follow here because we believeó But it's curious to me. When you filed a complaint in this case, right? Yes. They filed an answer, and in paragraph 9 of their answer in the record, they denied that your client suffered from B-cellular foma, but more importantly, they denied that any illness, disease, or other injury was caused by the production or use of benzene. That's correct. So I'm having trouble understanding how they can denyó I mean, they don't say they have lack of knowledge or insufficient information like they do throughout the rest of their answer, but they specifically deny the cause and effect, and yet they use that then. They kind of switch horses, it seems to me. So maybe you can explain how you can do that. Well, I can. You can do that since one month. I don't think they should be able to do that, Your Honor. I don't think they should be able to take the position that benzene does not cause illness, which, of course, is going to be their position throughout trial. I mean, throughout the whole entire case, they've taken that position from the beginning that benzene does not cause brain cancer. Is that what you're saying? Yeah. I'm trying toóthis was not a summary judgment, right? No, Your Honor. This was a motion to dismiss. 619. Correct. So under 619, are we to take the facts alleged in your complaint as true? Yes, Your Honor. And theyóI believe that the court should take those facts alleged as true. Well, is that the law? It is the law, Your Honor. It is the law. Yes. So I'm just confused how you can specifically deny the cause and effect and then turn around and useósay the plaintiff should have known. Well, those are certainó Throughout the proceedings, what has their position been? Welló Apart from this answer. Well, their positionóI mean, as far as whether this chemical causes diseaseó Well, you have toóthey're saying that your client was on notice. So how was he on notice? Well, the only basis for notice is the claimótheir allegation is the only basis for notice is the claim, because if they look at the medical records, the doctors say, no, this was not caused by benzene. They try to get around it by this claim form only. That's their only basis for something. Well, they also used this class action that was filed. You know, the class action is what I would call the red herring. In the class action, we specifically excluded people that we contended had a disease caused by benzene exposure as we had to. The class action had only to do with property damage. And it also sought medical monitoring just in case anybody in the future got a disease that was caused by benzene exposure, which no members of the class were alleged to have, including Mr. Sanford. Okay. Well, didn't the court rely as well on the class action in making its decision? Yeah. And I think what the court was saying is because in the class action it says that everybody knows there's benzene in this neighborhood, therefore that proves that benzene causes disease, which is a quantum leap in causation that is not justified. So I don't understand. Did you exclude Mr. Sanford in this class action? He was a property owner. He brought a claim for property damage only. We did not make a claim that he had any kind of disease caused by benzene exposure. No, but in the class action, it does say that benzene causes all kinds of nasty things. In the class action complaint, it says that. Well, what the class action is saying is benzene is known to cause certain illnesses, and specifically the class action says benzene causes leukemia, lymphoma. Well, can you make the jump from leukemia and lymphoma to the kind of brain cancer that you're finding? No. Why not? Now, without an expert's opinion, you can't. Because brain cancer is not cancer. There's different studies done about specific types of cancers being caused by specific chemicals, benzene being one of them. In benzene, there's a lot of research on benzene. And at the time the class action was filed, the research, we allege, all said lymphoma, leukemia, anything having to do with bone marrow, benzene attached to the bone marrow. Now, they pick out a certain phrase in the class action which talks about benzene being lost in certain brain cells. Fatty tissues and things. I didn't realize our brain was so fat. Well, it was never alleged in the class action that benzene causes brain cancer. Never. I understand, but it was alleged in the class action complaint that the benzene causes all kinds of things. It was. That's why we asked one of the others. We asked for medical monitoring so that they could test the people's blood for early signs of the diseases that we mentioned. We never got that far because we ended up going a different route and selling it a different way because there was another class action filed in federal court and then we kind of joined together and all that. So we ended up selling it as just a property damage claim. But, yeah, we allege it causes a lot of damage. Does Illinois have medical monitoring now? Yeah. That's my question. That, I don't know if that's ever been decided in the state of Illinois. It's been decided in some states, yes, in some states, no, but I'm not aware of it ever being ruled upon in the state of Illinois whether medical monitoring should be allowed or not. But, yes, they have taken the position consistently that benzene does not cause brain cancer. How does this case relate to the kinds of cases we see in the asbestos cases with the latent discovery? Explain that to me. Well, first of all, it relates in certain respects. In other respects, it's a little bit different. First of all, it is a latent injury case. People are exposed to benzene and generally, depending on the disease they get, it can take one year, five years, 15 years, 40 years to get the disease. So it's a long latency period for the disease to come about. And then we have to have, that's where it's similar. Where it's different is with asbestosis and that disease is like a hallmark disease of asbestos exposure. You get asbestosis, there's really no other way to get asbestosis other than asbestos exposure. With a disease like this. Or mesothelioma. Or mesothelioma, yes, yes. Although I think some people might argue with you on lung cancers. Right, right, right. But you're saying that there's an established cause and effect between the exposure to asbestos and some diagnosed illnesses. That's correct. Okay, what about benzene? Is there any link now that has been discovered? Like in asbestos where you know you've got exposure to benzene because you've got this kind of cancer. The short answer is no. There is a certain type of leukemia, AML leukemia, acute myeloid leukemia, which the defendants will agree is caused by benzene exposure. But there's a big disagreement with how much benzene you have to be exposed to to get the disease. In benzene exposure, it's how many parts per million have you been exposed to. They'll say you have to be exposed to 40, at least 40 parts per million. Where plaintiffs will say it has to be one to two parts per million to get acute myeloid leukemia. Once you step off from acute myeloid leukemia, then the defendants, depending on the disease, and there's a whole spectrum. The closer to acute myeloid leukemia it is, the more likely they are to agree. Then as you get further afield from acute myeloid leukemia, especially when you get to something like brain cancer, they're like no way, never, no matter how much benzene you're exposed to, you could never, ever get brain cancer from benzene exposure. That's their position in this case, as according to the case of their answer. As far as I know, that's been their position in every case across the country uniformly. It can never cause brain cancer. We think that the trial court should not have decided this is a matter of law. If you want to get specific, specifically the motion to dismiss stage. We think we showed the court with uncontested affidavits. I was going to ask you, no counter affidavits were filed? There was no affidavits filed by the defendants at all, Your Honor. And, in fact, if they were, you know, I don't want to get into evidence that's not part of the record, but... No, don't do that. Yeah, yeah. They did not file anything in response to our affidavits that the treating doctor said benzene didn't cause it and that the experts hired by the work count attorney said it didn't cause it and that's what caused him the problems in the workers' comp court, which caused the attorney to back off from the court. We think this is just another step down the line of well-established case law that there has to be objective evidence of causation. It doesn't matter what a layperson thinks. If he's being told, if there is evidence that he's being told no, this is not being caused by a benzene exposure. It's not fair to rule against him and trigger the statute of limitations and not allow him to proceed with his case. His actions were showing diligence here. He's not a guy slept on his rights. He's a guy who pursued this case, and he shouldn't be punished for pursuing this case and just running into a brick wall. And the rule shouldn't be in Illinois that somebody has to file a case when they have no basis for filing a case, which is what the defense position is. You should have filed your post-injury case back two years ago when you were being told you had absolutely no evidence that benzene caused your illness, and that would have been, of course, fatal to him at that time and unfair to him at that time when he actually did what he should have done. Pursued it as far as he could, and then he ran into a brick wall, sobbed, which is what he did, and then until later when he found some evidence to go forward that science would now help him prove his case. So, Your Honor, if there's no further questions. Thank you, Your Honor. Thank you very much. Okay. We're going to have one argument. One argument. More than one argument, yeah. Good morning. Good morning. My name is Robert Ellworth. I'm here from the law firm Pepper Broom, and I am going to make argument this morning on behalf of what we should call the refinery, BP, Shell, and Conrad Phillips, as well as Turbo Max. I wasn't going to start with this, but I think it's important to start with a direct response to what you just heard. There's no evidence in the record whatsoever that any expert ever told Mr. or Mrs. Stamper that this brain cancer was not caused by benzene. There's evidence in the record to support only that when they asked treating physicians, no one created the link. Wait a minute, wait a minute, wait a minute. A treating physician is not an expert? It depends on what, no, it's not what I'm saying. I'm saying what came out of the person's mouth. What you were just told was experts told them the answer is no, there is no link. Can it be a treating physician? It can be any expert. A treating physician is clearly an expert under Illinois law. Without question. Okay, so if a treating physician says, look, this is not related to your benzene exposure, you're saying that's not an expert? No, no, no, no, that's not what I'm saying at all. What I'm saying is if the treating physician, or frankly any other expert, actually speaks the words there is no link between benzene and your cancer, that is an affirmatively different statement than saying what is actually in the record is what I'm going to say now. The record says I couldn't find anybody to tell me yes or no. That's what the record says. And that's an entirely different thing. These people were never told the answer is no. There is no link. They were never told anything that was wrong. No one ever made a commitment one way or the other. I just wanted to make that point at the outset because it's an important statement. And I am absolutely without question that the record does not support the statement that was just made. And I think that the reason that maybe we might have gone a little too far there is because how important it is. The issue here is a matter of knowability. That's what the purpose of the discovery rule. Nolan itself says the reason that we have this rule is to protect plaintiffs from being forced to file things they don't even know they exist, right? In this case, there's no question by 2010 we have an injury, everybody knows what it is. The issue here is whether at some point prior to, since this was filed in 2017, prior to 2015, there was a reason for Mr. Stamper or Mrs. Stamper, since she has cause of action as well, to have some sort of reasonable suspicion that that injury was wrongfully caused. That's what we're here to talk about. And how do we know these things? And the law, again, the law does not require the scientific certainty, objective, definitive causation evidence that counsel is suggesting. In fact, no case says that. The Nolan and Knox cases themselves speak of the duty, this is Knox, his duty of inquiry begins well before she can be certain that the defendant's conduct satisfies all elements of the particular cause of action. What he's suggesting is, is that he needs an expert opinion of such strength and particularity to even just trigger the discovery rule two-year investigation period. He needs to be able to get past somebody's judgment. That's not the rule. If, in fact, you take it to its logical extension, the argument that you just heard, is that there's still no definitive evidence that benzene causes this particular strain of brain cancer, then the case isn't even right yet. I mean, it has to be one or the other. Wait a minute. When you file a complaint, and either whether it's verified or the lawyer files it, under Rule 137, there has to be a reasonable basis in factor law to file that plea. There's no question. That's their burden to prove. So they're not saying with certainty, but they have a reasonable basis under Rule 137. But there's no way that the hurdle can be that low, relatively speaking, I understand, that low for 137, but be extraordinarily high to trigger the discovery rule in the first instance. Why not? I mean, to this day, as I was asking, you, your clients, all of your clients, have denied in their pleading that there's any causal link between benzene and the plaintiff's claimed injury. Well, I will say that only one, there's only one answer filed in the case that's BP filed an answer. But in the pleadings that have been filed on this motion to dismiss, you claim that there is, I mean, I don't understand why you can claim notice in your pleadings under, okay, let me begin. This is not a summary judgment motion, so no affidavits were filed by the defendants. They filed affidavits. It's a 619, 2-619. Under that, as I understand the law, you take the plaintiff's pleadings as true. Correct. And then you have to show some affirmative matter here that I assume the statute of limitations. Correct. Which would cause dismissal of the case. Yeah. How can you claim an affirmative matter, that is, they should have known about this causal link, when you deny the causal link? I don't know of anywhere in the motions, in the motions to dismiss, that there is a specific denial. I certainly don't believe that there's anything in the briefs that includes a denial, that it causes, that's a trial issue. For purposes of this motion and for purposes of this argument. Okay. I mean, I'm not conceding that a trial is. So what's the basis of the argument? Excuse me? What is the basis of the argument? The basis of the argument is that in 2010, Mr. Stamper makes an affirmative correlation between the two in his workers' compensation action. In 2011, this punitive class action gets filed, citing U.S. EPA, Health and Human Services, and an international group whose name escapes me. I got it written in the notes, but it's not that important. It's in the complaint that these governmental entities have drawn a line between benzene exposure and its cause of cancer. And one of the allegations in both that class action attempt and then the second amended complaint where Mr. and Mrs. Stamper are actually named plaintiffs that was filed in 2013. It's the same complaint, except for the difference in the plaintiffs. That complaint, those two complaints, both specifically allege that those governmental reports, they're not attached, so we don't really know what they are. We have the allegations only. That both of those specifically state that benzene attacks fatty, lipidous tissues such as the brain. Seeks them out preferentially and decides to go there. I'm not a doctor. I can't speak the language, but that's what it alleges. These people are plaintiffs in 2013. Excuse me. I can speak. Okay? When I speak, you stop. Okay? Yes. I want to ask you about a statement you just made about the link between the complaint saying that there was benzene and these fatty, lipidy tissues. Did you provide any expert affidavits to show that these, quote, fatty, lipidy tissues were the kinds of lymphomas or whatever kind of brain cancer this gentleman had? I mean, how are we to know that this link exists? Your Honor, for these purposes, the allegation is made in the complaint. We're not challenging the allegation. I mean, that's a substantive defense that we are nowhere near 619 statute of limitations. That's not at issue here. The only issue is what the stampers knew before 2015. How do you make the link between what they knew with regard to his brain cancer and what you're arguing? I'm really having a tough time here because you've not made a link except to in your pleadings on the motion to dismiss say, judge, look at these pleadings. And the point of that is this. On their behalf, an argument or a pleading was made in the Ford litigation, which is now settled. That's run its course. That's a class action litigation. Well, it was filed as an attempt to be a class. It was not certified, so it ended up being 150 named plaintiffs. Okay, but I'm just saying, for the record, when you use the name the Ford litigation, you're talking about this class action complaint and the amended class action complaint. Yes, yes. But anyway, that whole thing is the stampers were named plaintiffs in that case that's settled. What was the allegation in that case? What was their case based on? These governmental reports that are alleged in the complaint are not ñ there's nothing more to it than that. The only thing that the stampers needed to do, quite frankly, is file an amended allegation on behalf of Mr. Stamper, who was already stricken with his cancer at that point. Their complaint provides enough basis under Rule 137 for them to make an allegation that Mr. Stamper's brain had been preferentially attacked by his benzene exposure. He already had the cancer. That's what needed to be done. It's irreconcilable for them to be making that allegation in the class action litigation and then in this litigation be claiming that, well, we had no way to know. What about the affidavit of Cheryl Stamper? The affidavit of Cheryl Stamper. Did you take her deposition? No, just straight 619. Okay. Again, none of the allegations in the statements of fact, I should say, in the affidavit establish what needs to be established here. And that is, was it unknowable in 2011 or 2013, unknowable for the stampers to have made ñ again, we're not talking about the stampers in 2011 and 2013. Winning this case, we're talking about them having a rational basis to spend the next two years, the discovery rule timeframe, to investigate their claim. That's what we're talking about. We're not talking about post-summary judgment trial issue certainty from a causation standpoint. You still have to have a reasonable basis to know. And I just don't see fatty lipids getting you there without some kind of expert testimony. None of the cases require that expert testimony. None of them. The cases, especially in latent injury cases, do require some basis, whether it's expert or otherwise. And the law in Illinois, as you know, well know, in asbestos cases, is changing. The public policy of Illinois is changing. We may not have statute of limitations when it comes to asbestos claims, correct? I think my answer to that is, well, today we do. I mean, I don't know how to answer that otherwise. Okay. Well, regardless, in latent injury cases, would you agree that the view is a little bit different than on, say, a personal injury claim where your foot's cut off by an auger? If your foot is cut off by an auger, you have no need for the discovery rule. Right. Right? I mean, if you're going to lay the auger, then no, you don't need the discovery rule, if we can be simplistic about it. If a worker who is an insulator who contracts lung or starts exhibiting lung problems, and over the years the cases are sort of filled with these facts, he gets that. He gets, well, most. And so he starts to get diagnoses of pulmonary fibrosis and things, and eventually he gets a definitive, it's asbestos, right? That's what those cases say. As of that date when he gets that, that is the latest date that the discovery rule begins. Correct. Begins. But there are other cases in very similar situations. In fact, there are asbestos-type cases, and these are all in the materials, where even if he doesn't have the definitive diagnosis of asbestosis, there are cases that say you should have known. The circumstances that you, as a lay person, you do not have a definitive diagnosis of asbestosis, and the discovery rule time frame already begins to run. There are those cases as well. It is not simply an extra. Excuse me. This is the appellate court, right? Okay. The cases that you're referencing that say you should have known, those are 619 cases when it doesn't look like a non-summary judgment? You know, I can't answer that right off the top of my head. Would you agree that a 619 motion is a little different than a motion for summary judgment? Yes. Yes, it's different. But I get none of those cases that are summary judgment cases involved, not only, some of them would have involved a workers' compensation claim, in fact, a lot of them do, but none of them involve what is also done here with the filings that are made specifically on their behalf, seeking medical monitoring damages for exposure to Benzene because of a heightened likelihood of these people contracting cancer. None of those cases have those facts, especially at 619 stage. Medical monitoring says, I don't know if I've got it yet, but I need somebody to look after me so that if I get it, I can be compensated. That's what medical monitoring is. I understand that. So by its very nature, would you agree that it's somebody saying, I don't know if I've got it yet, but I might get it? Well, but in Mr. Stanford's case, he already had it. Well, he had a cancer, but it was an unusual cancer. I mean, to even today, what I just don't understand is how a defendant can come in and deny there's any link in their answer, total and flat out deny it, and then say, well, Judge, they should have known. That's two different processes for me. Explain that for me. The difference is that in the particular case where there is an answer, again, it's only one defendant here, but in the particular case where there is an answer. So let me just interrupt you right there because I want to ask you, are you the defendant that denied it? I wrote a joint brief on behalf of all the parties, including the one that didn't answer. And the answer, is it your client that denies it? Who did this answer? Who do you represent specifically? My law firm represents ConocoPhillips. I wrote, this person wrote a joint brief on behalf of the three refiners. I'm not asking about the brief. I'm asking about the answer. It's BP Products North America. Who represents them? Not you. Thank you, Your Honor. Okay. Mr. Orlick represents them. So you haven't, your client has not filed an answer yet? ConocoPhillips has not, yes. Correct. Okay. So, do you think that BP Products, if this case were allowed to proceed, having now raised the issue they should have known, do you think that they're foreclosed from raising the denial? No. Okay. Why not? Because it does that, the denial that is filed in the answer has nothing to do with what these people should have known years earlier. The two of them are not related at all. These people filed a personal injury action. Which is the personal injury action? The comp claim? No, the class action. They asked for treatment damages in that action. They asked for medical monitoring. The complaint says treatment and seeking costs for treatment. Well, that's what medical monitoring is. I'm reading medical monitoring as the testing and should we be found to be sick. And I do believe that the complaint makes, that complaint makes this allegation. If we are found to be sick, the cost for treating the sickness. Right. If we are found to be sick, we want to be reimbursed the cost for treatment. You're exactly right. Correct. If, the key word being if, we are sick. Well, at this point in time, at the time of the filing, Mr. Stamber was sick. I don't know how else. I mean, that's just a fact. His comp claim was still pending, as a matter of fact, at the time that that class action was filed. And then it was converted to his name being a named plaintiff. But at the time he filed that, though, was there a link between, I mean, was there a definitive link anywhere between Benzing and the type of cancer he had? You just heard from the plaintiff that the answer to that is no. And my point of that is, then why are we even here on this? According to his view of the discovery rule, his own case isn't ripe yet. Well, that's not true. What Justice Barberis just asked you is at the time of the comp claim. Obviously, science changes. People understand links better. So the Justice's question was asking about the time of the comp claim. Actually, the time of the medical monitoring. The answer to that is no. The answer to that is no. Straight up, the answer to that is no. So you say that because he was sick, he knew that he would be getting some kind of damages. But if he had a cold, it doesn't mean that the Benzing caused his cold. So right now, the fact that he's sick with brain cancer doesn't indicate that Benzing caused it. So that action alone would not have provided him with any kind of damages or relief or medical expenses at that time. The way he phrased that, the answer to that is yes. But the difference is this. That's not the test for the discovery rule. The discovery rule is to be put on sufficient notice that it may have been wrongfully caused. He does not need the definitive link, the one that will get him past summary judgment. Yeah. I mean, that's – I have to answer your question, yes, I mean, because it's a true statement. But it's not what the rule is. We're not talking about is he going to win in trial. We're talking about does he have enough to be put on notice that he needs to make an investigation. And that two-year time frame. But he's made – from my reading of the record, there's no question that he has made his due diligence in investigating his potential claim. He's filed two lawsuits. He's had experts – he's sought out experts. He had lawyers seeking out experts to justify those claims. And he's been – from what I read, every step along that line, he's been told no. We can't – we can't just – we can't verify that the cause of your disease is Benzie. So he's done an investigation. How does he go any further with making a claim that the investigation that he has thus far done says that he doesn't have a claim? Again, that's not – specifically, that's – he was never told the answer is no, there is no link between the two. He was never told that. How do you know that? Well, I only know it because that's what's in the record. The affidavits don't say – Mrs. Stamper doesn't say nor does the comp lawyer in the two affidavits. Mrs. Stamper has two affidavits. They don't definitively state no, Benzie does not cause this. Mrs. – And so we can't prove that Benzie caused it. Correct. Isn't that the essence of his lawyer's affidavit? I couldn't find an expert. I mean, what more do you want her to say? You want her, an expert, to say, listen, I was consulted by this lawyer on – I mean, how does her affidavit not say this? Because the discovery rule timeframe does not – the two years that you're now given after the delay, whatever the trigger is, right, now it's knowable or at least worth investigating. That's what the point of discovery is. That two years doesn't guarantee you success of investigation in the two years. It only triggers the two years. So if it was an investigable issue in 2013 by virtue of these US EPA Health and Human Services reports, if it's worthy at that point of more investigation and the questions continue, the statute of limitations timeframe is still two years. It still has to be brought. And if you don't bring it within the two years, the right is gone. I understand where you're – believe me, I do understand your argument and where you're basing it on. However, my – the problem that I'm having is more with the reasonableness of pursuing the act. So, yes, you suspect you have a disease caused by benzene, and you file a lawsuit. And during that time, you investigate, and you can't find anyone who can substantiate that claim. So you give up on that claim. But then how do you finally – once you have more of a definitive – once there is some definitive answer out there for you that says benzene, you know, may have caused it, doesn't that restart that clock? Doesn't that give you the two years from that time? I think the answer to that is no. Okay. The timeframe is – I know it would be, but I – Yeah. Surprise. No, I – and the difference is – now I forget what I was going to say. The difference is that at least according to the plaintiff's counsel, he still doesn't have it. So, you know, where does that end? It doesn't last forever. When you're on notice of an investigation, you have two years to complete the investigation. If you come up empty, then that's where it ends. That's the law. It doesn't guarantee you a successful investigation. What case says that? What case says that? That that is the end? Because that would be a specific case. I will tell you which case it is. It is – And we'll give you more time, Mr. Daxson, to answer everything. Witherall v. Weiner, Supreme Court. I think it's 1981. I don't have that written here. I have it somewhere else. There's a quotation in there. If he fails to bring suit because he is incompetently or mistakenly told that he's not at a case, we discern no sound reason for visiting the consequences of such error on the defense. I recall that quote in your brief. But I think the appellant has similar language from cases that suggest otherwise as well. So I guess, you know, I'm not certain when the statute starts, based on the scientific progression of researching on what benzene causes and doesn't. Well, and I have comments on that as well. There's nothing in the record. There's nothing in the record that indicates that what's known about benzene – I'm just going to speak generally here. We're not admitting all these sorts of things. There's nothing in the record here that indicates that the knowledge about what benzene does from a cancer-causing perspective is any different than it is today, in 2019, than in 2013 or even 2011. There's nothing in the record that says that. The only thing that sort of comes close is Mrs. Stamper's – the allegation, the complaint in this instance case where she says, I was given articles in 2016 which – I'm paraphrasing – led me to believe that there's a link. Okay? There's no evidence of who authored those. There's no evidence of the articles themselves. There's no evidence as to when they were printed. But that affidavit is uncontested because the defendants chose not to file anything. That doesn't – It's uncontested. I'm not contesting what is in the affidavit. I'm simply pointing out what's not in it. But wouldn't that make that a question of fact, which is what opposing counsel was trying to argue earlier? These – this issue of fact is not pled. It's not proper for anybody to assume it's pled because he wants the argument to be rooted. What issue isn't pled? What issue isn't pled? Causation. No, I'm talking – she's – the plaintiff has a distinct and straightforward obligation to go forward with facts to establish the application of the discovery rule. And you're saying they have to plead it? It has to be pled. Yes. And on motion – Wait. Yes. Does it have to be pled initially or after it's raised? It has to be – on the – after – you know, I'll change my statement to make sure that I'm correct. After it's raised on 619, the plaintiff has to come forward. Correct. Which they did in the affidavits. If I misspoke, then yes. No, the affidavits were not prepared – no, the – and I'm not talking about that. There is – the statements about the 2016 article reading timeframe, that's actually in the complaint. The affidavits don't touch that. Nothing. So there is nothing in the record that speaks to what was known in – that there's any difference between today and 2011. The only thing that even speaks to a change in circumstance is this amorphous statements about I read articles. There's no indication what the articles say. There's no indications of – that say, aha, we just discovered in a new study that benzene causes – Why did she have to say that if you have done nothing to contest it? Because it's her duty to establish the discovery. But she did. She said I read an article. You had the opportunity to take a deposition, to say what article, to test the veracity of that affidavit. The defendants chose to do nothing. Again, this is not – these are facts that are not pled. We cannot take them as truthful purposes of this motion to fill in the gaps. Why? Because they're not in – I mean, they're not in the record. I don't know where they're coming from. Somehow we seem to be writing the article for her. You file a motion to dismiss under 2-619. They come forward with affidavits saying we just – we didn't know about it. And so instead of you guys filing anything except a denial and an answer, you start arguing, well, you knew about this because you filed this complaint and that complaint. But you've done nothing substantively other than point the finger at these other things. And that's why I'm having trouble with this because the defendants chose to do nothing. Well, I guess I disagree that we chose to do nothing. We gathered the pleadings that facially would indicate – I didn't mean facially indicate. They facially state affirmatively that in 2011 Mr. Stanford believed that his brain cancer, his own brain cancer, was caused by exposure to benzene. That's the workers' compensation application. He only says cancer. He only had one cancer. Okay. He says his cancer was caused and then his lawyer files an affidavit saying we couldn't find any connection or we had to withdraw. And that is dismissed. So as Justice Barbera said – These are – but that's – that is two different stages of litigation. Well, okay. Let me ask you a different question. Are you saying the Witherell case answers Justice Barbera's question that if you file something and it gets dismissed, then you do not have the opportunity to reopen the door? Because I'm not sure that's what that case was. That's not what I was intending Witherell to say. Because I think Witherell was not – they didn't even file yet. No, one of the other cases – Am I right about that, Witherell? Yeah. Witherell has nothing to do with that particular statement of law. Okay. Because that's the question he was asking you. Let me ask you another question. You keep talking about these EPA reports and the class action complaint. The second amendment class action complaint, I'm looking at paragraphs 5 and 6, talk about how plaintiff believes benzene causes that but Shell denies it. They've got a website that's saying they deny it. And so I'm not sure what reports you're talking about that make this link in the class action complaint. May I take a look at – I have it right here. Absolutely. And I know we're keeping you, but I'm surprised you all had an opportunity. Enjoying this. Maybe a little more. I'm sorry. It's A85 or C – Paragraph 47. C-204, I'm looking at. 03-02-03-04. Those are the allegations of Shell denials, right? Well, no. There's a discussion about these EPA reports. No. I'm referencing different paragraphs when I say that. And I know that the citations are in the brief. I'm going to go back to A-111. Paragraph 47. I'm sorry. What paragraph is that? Paragraph 47. Yes, that's right. It's page 51 of 79 of the second amended complaint. Several agencies, e.g., U.S. Department of Health and – Could you just reference the common law site for embedding? It is C-250. Okay. And what paragraph are you talking about? 237. And just for the benefit of my colleagues, it says, several agencies, e.g., U.S. Department of Health and Human Services, U.S. Environmental Protection Agency, and the International Agency for Research on Cancer, classify benzene as a confirmed human carcinogen. That's what you're saying? Absolutely, yes. Okay. Earlier in this complaint, though, in paragraphs five and six, and I'm talking about the second amended complaint, there's a discussion, if you will, about the back and forth between whether or not there's a cause between lymphoma and leukemias, right? Are you referencing those earlier, those long paragraphs about Shell's website? Is that what you're talking about? I don't know who the back and forth is, but – I mean, you've relied in this argument about these EPA reports, and I thought maybe in the complaint somewhere you had some definitive matter that you were talking about. But merely saying that governmental agencies have said benzene is a human carcinogen, that's what you're hanging your hat on? No. I noticed. Not entirely. The fact that it was enough to file this lawsuit. Okay. I mean, that's what this lawsuit was based on. It's Shell – and I'm going to speak generally about all those long paragraphs. Shell making statements is no different than a defendant in a lawsuit saying, no, the light was green when I went through it. There's nothing – as a pure legal matter, there's nothing more dramatic about it than that. That Mr. Plaintiff in the automobile accident still only has two years to file his lawsuit, whether the man he believes ran a red light agrees with him or not. He can't – he doesn't need to go out and hire a traffic reconstructionist to file his lawsuit. He simply doesn't. I don't think blatant injury cases are the same as running a red light. Well, but when you're reading those paragraphs that, as an industry or something, the allegations that the industry denies that's generally what they're about, that's – No, I thought you were saying that because of all these EPA reports that weren't attached to the complaint, you made that statement, that somehow the plaintiff should have known. So I was trying to identify which paragraphs it is you were talking about. 237 is what I'm talking about. And if you're talking about 237, then that clarifies it for me. I appreciate it. That was – I know. Okay. I think we're done. Okay. Thank you. Okay. Mr. Dysart, if you need additional time, you can have it. I just have a few comments before I – Okay. We're not – I mean, we don't want to cut you off. I just want to make a few statements that I think appellant counsel went way too far on certain things he said. For instance, he said that in the affidavits of Cheryl Stamper and the attorney – there was no information brought to the attention of deceiving that his brain cancer was not caused by bending. And I just want to read exactly what the affidavit says so the court can draw its own conclusion because I think he's misstating what the evidence is. This is whose affidavit? This is the affidavit of Cheryl Stamper, which is C-501. Paragraph 4 says, My husband and I specifically asked his treating physicians if bending could be a cause of his brain cancer, and we were told there's always ongoing research about the cause of brain cancer, but they were not aware of any research linking bending to brain cancer at that time. I think that's pretty definitive. And also, when his workers' comp attorney says, ultimately, we were unable to obtain an expert opinion establishing a causal connection between Mr. Stamper's glioblastoma multiforme and his bending exposure, I think that's pretty definitive. I mean, what else can you say except no, there's no link? He's being told there is no link between bending exposure and your glioblastoma multiforme, which is not a form of lymphoma, not a form of leukemia. It's a separate, unique, rare disease. So I think Helen Calser misstated what the evidence was in front of the decedent at that time. I'm sorry to interrupt. I tend to do that. I would like to know what you think the answer is to Justice Barbaros' question about, you know, if you file something and you find out there's no link, do you get to start again? Is there any case law that you're aware of like that? Well, I guess I would say that there is, Your Honor. And I'm just going to, if you give me one second, I'm going to turn. In some of the cases that were cited by the, if you look at our reply brief, we talk about several cases. In fact, if you just give me one second. In the Midas v. Ifill Corporation case. Midas? Yeah. MIT SIAS v. Ifill Corporation, which is 2-11-01-1st-1-0-1-1-2-6-2011. A plaintiff had brought a case against certain medical defendants and then later was allowed, I think he was allowed to amend the complaint after the statute of limitations had run against a medical device manufacturer because he became aware of evidence through an expert witness that this medical device, that the new research that showed this medical device was likely a cause of his injury. So I think that did allow him to bring in a new defendant after the statute of limitations had run. That was the only case? It is the only case, Your Honor. And, of course, the Hunsaker case in the state of Texas addressed this issue specifically. But just to reiterate what the Court said, in the complaint itself, the plaintiff alleged that she read articles in 2016. The defendants never took issue with that or said, well, those articles don't say that. She had no basis to re-bring this case. And the defendant says we have evidence now that benzene causes this glioblastoma multiforme. Well, we do have evidence now. The Court asked us on the record twice, have you talked to an expert? I said, yes, twice. I said, do you want me to file an affidavit in the Court? Basically, he's like, no, don't worry about that. I'm just going to dismiss the case. But we did file an affidavit afterwards from an expert from Stanford saying that benzene caused glioblastoma multiforme. He's an expert in glioblastoma multiforme. So it's not like this is a never-ending expert issue. And the complaint itself does say that she became aware in 2016 that benzene could potentially cause her disease, and they never took any issue with that. So we didn't have to do anything more with it, as the Court has already pointed out. And these articles from the U.S. EPA, it's just pure speculation. They didn't say nothing about glioblastoma multiforme. If they had, then he would have brought a separate lawsuit outside of the class action at that time. But he didn't have any evidence at that time. That's a good point. And because he would have been obligated under the claim-splitting rule to bring this case at that time. That's right. He had no evidence. He couldn't have split his claim. And when we originally brought the case, we made the class, when we said define the class, we excluded people that already had a disease caused by benzene exposure. And he was not excluded at that time because we did not have any evidence that benzene caused his glioblastoma multiforme at that time, Your Honor. I have not read the Texas case. I'll admit that. But my question just briefly is, does Texas, do you know, have the same kinds of discovery rules that we do? I mean, would it be a comparable case? Very comparable, Your Honor. In fact, they talk about in their, it's a very well-written decision, I believe. It talks about all the other states could have a similar discovery rule. They point out the state of Illinois in one of their footnotes is having a similar rule to them. It is a two-prong test, knowing that you have a disease and knowing that it was lawfully caused, just like in the state of Illinois. And they're specifically addressing whether the plaintiff knew the disease was lawfully caused, in their opinion, just like in the state of Illinois. So we point out in our briefs that it is a very similar rule and it's consistent with Illinois law and is a good further development of these law in Illinois. Thank you, Your Honor. Thank you, Governor, for your arguments. John, I want to thank you all for coming. It's an honor to be taking your advice and I look forward to hearing your reports.